UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| LORI OLAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 1:19-CV-96-KAC-CHS |
| | ) |
| UNUM LIFE INSURANCE COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the Report and Recommendation of United States Magistrate Judge Christopher H. Steger ("Report") [Doc. 152]. The Report recommends that the Court grant Defendants' "Motion for Judgment on the Administrative Record" [Doc. 119]; deny Plaintiff's "Motion for Judgment on the ERISA Record" [Doc. 126]; and deny Plaintiff's "Motion to Determine the Extent of Deference" [Doc. 122], instead considering the issues raised in that motion to the extent they bear on the motions for judgment [*See* Doc. 152 at 1, 13]. Plaintiff timely objected to the Report [*See* Doc. 153]. However, because Defendants' decision to terminate Plaintiff's disability benefits was not arbitrary and capricious, the Court (1) **OVERRULES** those objections; (2) **ADOPTS** the recommendations of the Report as set forth below; (3) **GRANTS** Defendants' "Motion for Judgment on the Administrative Record" [Doc. 119], and (4) **DENIES** Plaintiff's "Motion for Judgment on the ERISA Record" [Doc. 126].

I. Background

A. Factual History

The Report provides an accurate summary of the administrative record, and no party disputes the facts [*See* Doc. 152 at 2-12]. However, the Court summarizes the most salient facts

here. Plaintiff, Lori Olah, previously worked for Pharmaceutical Product Developement, LLC as a clinical research associate [Doc. 31-3 at 9, *sealed]. In that role, she participated in an insurance plan managed by Defendants Unum Life Insurance Company of America and Unum Group (collectively "Unum"). Plaintiff's insurance plan included three relevant Unum policies: short-term disability ("STD"), long-term disability ("LTD"), and life insurance without premiums ("LWOP") [Docs. 31 at 113, *sealed; 31-3 at 47, *sealed].

On May 2, 2017, Plaintiff underwent surgery to correct a pinched nerve root in her lower back [Docs. 31 at 74, *sealed; 120 at 4 n.2]. Postoperative imaging showed successful fusion of the vertebrae and "[h]ardware in good position" [Doc. 31 at 95, *sealed]. Because she anticipated being unable to return to work promptly following surgery, Plaintiff filed for and received maximum benefits under the STD policy from May 2, 2017 to October 28, 2017 [Doc. 31 at 42, *sealed]. As the STD benefit ended, Plaintiff's attending orthopedic surgeon, Dr. Patrick Curlee, recommended she not return to work until January 2, 2018 [Doc. 82]. Based on Dr. Curlee's assessment, Unum determined Plaintiff was disabled under the terms of the LTD policy and approved LTD benefits beginning October 29, 2017 [Doc. 31 at 200, *sealed].

As the Report observed, Dr. Curlee's notes show that Plaintiff's health improved in the year following her surgery [Doc. 152 at 21-22]. For example, Dr. Curlee increased his assessment of her lower body motor strength to "5/5" in all areas by March 22, 2018 [Doc. 31-1 at 33, *sealed]. Plaintiff's straight leg raise test improved from positive to negative [*Id.*]. Her walking endurance increased from half a mile to 1.5 miles in an hour [Doc. 31 at 67; 31-1 at 33, *sealed]. Plaintiff reduced the amount of narcotics she was taking to ten milligrams of Percocet per day [Docs. 31 at 67, *sealed; 31-1 at 33, *sealed].

Eleven months into Plaintiff's recovery, Dr. Tony Smith, a staff physician board-certified in family medicine, reviewed Plaintiff's medical file on Unum's behalf to determine if "the evidence currently available for review reasonably support[s] an inability of Ms. Olah to work full time within the Sedentary range of functional demands" [Doc. 31-1 at 90, *sealed]. Before finalizing his opinion, Dr. Smith wrote to Dr. Curlee expressing his concerns that Dr. Curlee's:

> "3/22/18 exam [of Plaintiff] was functionally unremarkable related to Sedentary level work. Ms. Olah lives alone, drives, and reports no deficits related to ADL's [activities of daily life] or household activities. It is currently unclear why Ms. Olah has not returned to work"

[*Id.* at 48]. Dr. Curlee responded that Ms. Olah "continues to be treated by my office and has not been cleared to return to work. She is to follow up on 5/16/2018 where we will evaluate her restrictions" [*Id.* at 54]. Dr. Smith found that the improvements Plaintiff made over the preceding months were no longer consistent with the work limitations Dr. Curlee recommended [*Id.* at 92].

Unum then forwarded Plaintiff's file to Dr. Frank Kanovsky, a licensed orthopedic surgeon, to determine whether the medical evidence was more consistent with Dr. Curlee's opinion or Dr. Smith's opinion. Dr. Kanovsky noted several of the same inconsistencies in Plaintiff's case that Dr. Smith noted, but he also noted that Plaintiff "has not been referred for physical therapy as there are no physical therapy records available" [*Id.* at 98]. Ultimately Dr. Kanovsky concluded that there was insufficient data available "to determine functional capacity with supported [restrictions and limitations] at th9s (sic) time," but that "the information reviewed was more consistent" with Dr. Curlee's opinion [*Id.*]. In light of the "surgery performed," Dr. Kanovsky recommended the Plaintiff's body be given "at least 1 year" to "see if the nerve root recovers" [*Id.* at 99]. To this end Dr. Kanovsky recommended that Dr. Smith reexamine the file

3

after Dr. Curlee assessed Plaintiff's restrictions and limitations the following month—twelve months after the surgery [*Id.*].

On April 20, 2018, after Dr. Kanovsky's initial recommendations, but before Dr. Curlee's further assessment, Unum approved Plaintiff's receipt of benefits under the LWOP policy in addition to her LTD benefits [Doc. 31-3 at 207, *sealed]. On May 3, 2018, Dr. Curlee sent Unum notes from his assessment of Plaintiff and further notes from Plaintiff's visit to a physical therapist [Doc. 31-1 at 120, *sealed]. Dr. Curlee's opinion and assessment was largely unchanged from the March 22, 2018 exam, but he did note that Plaintiff complained that physical therapy worsened her back pain [*Id.* at 105, 399-400].

On May 4, 2018, Dr. Smith opined that the "exam from Dr. Curlee and the PT [physical therapy] exam combined do not support functional deficits precluding Sedentary level work" [*Id.* at 121]. Then on May 9, 2018, Dr. Kanovsky reviewed the updated opinions from Drs. Curlee and Smith, and notes from Plaintiff's physical therapist [*Id.* at 123]. Dr. Kanovsky concluded "[f]rom an orthopedic perspective and to a reasonable degree of medical certainty, the information reviewed regarding the lumbar spine does not provide evidence that suggests capacity that would preclude the claimant from activity" [*Id.* at 423]. To support this conclusion, Dr. Kanovsky pointed to (1) Plaintiff's functional range of movement in the lumbar spine, (2) her complaints of increased pain on flexion even though "flexion widens the spinal canal and decompresses the facet joints," (3) the computerized tomography ("CT") scan showing "solid fusion" from the surgery, (4) the magnetic resonance imaging ("MRI") showing no impingement, (5) Plaintiff's reduced narcotic use to "1 Percocet/day with no documented side effects," and (6) her ability to walk 1.5 miles and do light housework [*Id.* at 124]. By May 15, 2018, Unum terminated Plaintiff's LTD and LWOP benefits [*Id.* at 136; Doc. 31-3 at 232, *sealed].

Plaintiff timely appealed the termination of her benefits [*Id.* at 158]. As part of the appeal she provided additional medical records including a May 17, 2018 MRI that an independent radiologist interpreted [*See* Doc. 31-3 at 505, *sealed]. Unum assigned a third file reviewer, Dr. Wade Penny—a board-certified orthopedic surgeon, to "perform[] [his] own independent analysis of the medical records and form[] [his] own opinions" [Doc. 31-3 at 466, *sealed]. On December 10, 2018, Dr. Penny concluded that "to a reasonable degree of medical certainty" Plaintiff's medical file and diagnoses did "not support [restrictions and limitations] as of May 15, 2018 and ongoing that would have precluded [Plaintiff] from performing sustained full-time accommodated sedentary physical demand level activity" [*Id.* at 467]. In reaching that conclusion Dr. Penny noted, "while some disparity of diagnostic imaging studies between physicians is not uncommon, the degree of inconsistency in readings of the 5/17/18 cervical spine MRI by the radiologist and Dr. Curlee was exceptional" [*Id.*]. Dr. Penny observed that Dr. Curlee read "moderately severe degenerative disc disease," but the radiologist read "only very mild bilateral foraminal stenosis at C3-4 and mild left C4-5 foraminal stenosis" [*Id.*].

Additionally, Dr. Penny concluded that Dr. Curlee's physical exam results were "not consistent with impairment" [*Id.*]. Although Dr. Curlee opined that Plaintiff's impairment was caused by continued injury to the nerves in her back, Dr. Penny noted "postoperative findings of lower extremity weakness resolved in 2018 as did findings of S1 distributive numbness;" "[straight leg raise] testing was negative and radicular symptoms greatly improved;" and ongoing "neural deficiencies were limited to reports of L5 distribution numbness" for which additional diagnostic testing was not pursued [*Id.* at 468]. Dr. Penny noted that Plaintiff did not pursue the epidural steroid injections prescribed by Dr. Curlee in May 2018 [*Id.*]. Further, he noted the observations that Plaintiff walked with a cane were inconsistent with the results of Dr. Curlee's

contemporaneous physical examination that showed "normal lower extremity strength, a normal gait, no limp, and the ability to heel toe walk" [*Id.*]. In examining Plaintiff's activities of daily life, Dr. Penny noted that Plaintiff "lives alone and there was no indication of an inability to independently manage personal and financial affairs, or that claimant voluntarily or involuntarily surrendered her driving privileges" [*Id.*]. On December 14, 2018, Unum denied Plaintiff's appeal based, in part, on Dr. Penny's opinion [*Id.* at 472-75].

### B. Procedural History

On April 1, 2019, Plaintiff filed a Complaint under Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, (ERISA) for LTD "plan benefits" (Count One) and "life insurance plan benefits" (Count Two) [Doc. 1 at 1, 8-9]. Plaintiff alleged that Unum's denial of her LTD and LWOP claims was "arbitrary and capricious" and that she "has been and continues to be disabled" under both policies [Doc. 1 ¶¶ 36, 79, 81, 87, 91]. Plaintiff also alleged that Defendants had "a perpetual conflict of interest" impacting claim determinations because Defendants paid benefits out of their "own funds," which "influenced" their "decision-making" [*Id.* ¶¶ 55-57, 71].

Defendants filed a "Motion for Judgment on the Administrative Record" [Doc. 119] asking the Court to "dismiss Plaintiff's claim for benefits" and "affirm" Defendants' "determination that Plaintiff was not eligible to receive further benefits" under both the LTD and LWOP Policies [Doc. 119 at 1]. Defendants asserted that their decision to terminate Plaintiff's benefits "was reasonable and supported by the record" after "thorough review" [Doc. 120 at 13, 16]. Plaintiff filed a competing "Motion for Judgment on ERISA Record," asserting that Defendants' decision to terminate her benefits was arbitrary and capricious [Doc. 126]. Plaintiff separately filed a "Motion to Determine Extent of Deference" [Doc. 122] asking the Court to "give little, if

6

any, deference to" Defendants' decision because of the "conflict of interest" from Defendants' role as claims handler and benefits distributor [Doc. 122 at 1]. The Court referred the operative Motions to Judge Steger for his Report and Recommendation [Doc. 139].

The Report recommends that the Court grant Defendants' "Motion for Judgment on the Administrative Record" [Doc. 119] and deny Plaintiff's "Motion to Determine the Extent of Deference" [Doc. 122] and "Motion for Judgment on the ERISA Record" [Doc. 126]. Plaintiff filed timely objections to the Report [Doc. 153]. Plaintiff's objections track closely to the arguments raised in her "Motion for Judgment on the ERISA Record" [Doc. 126] and "Motion to Determine the Extent of Deference" [Doc. 122]. **First**, Plaintiff asserts that the Report erroneously considered evidence of medical improvement occurring before April 20, 2018, when Defendants approved Plaintiff's LWOP benefits. **Second**, Plaintiff asserts that the Report erroneously considered "cherry picked" evidence from Defendants' staff physicians to determine Unum was not required to order a physical exam of Plaintiff. **Third**, Plaintiff asserts that the Report failed to properly consider evidence of a conflict of interest.

## II. Legal Standard

When reviewing a report on a dispositive motion, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b); *see also* 8 U.S.C. § 636(b)(1)(B). However, the Court need not review "any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). "It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Id.* at 150.

Under Section 1132(a)(1)(B) of ERISA, the Court applies either a de novo or an arbitrary-and-capricious standard of review. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Autran v. Procter & Gamble Health & Long-Term Disability Benefit Plan*, 27 F.4th 405, 411 (6th Cir. 2022). Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court applies an arbitrary-and-capricious standard. *Firestone Tire & Rubber*, 489 U.S. at 115; *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir. 2005). Here, both the LTD and LWOP Policies gave Unum the "discretionary authority to make benefit determinations under the plan," including "determining eligibility for benefits," "resolving factual disputes, and interpreting and enforcing the provisions" of each policy [*See* Docs. 31 at 154, *sealed; 31-3 at 93, *sealed]. As the Parties agree, this language confers discretion to Unum [Docs. 120 at 12-13; 135 at 14-15; 34 at 11]. The Court therefore applies an arbitrary-and-capricious standard to review Unum's denial of Plaintiff's LTD and LWOP claims. *See, e.g.*, *McCatha*, 419 F.3d at 442 (applying arbitrary-and-capricious standard of review where policy conferred the power "to construe and interpret this Plan and each Benefit Plan and to decide all questions of eligibility"). "The burden is on the claimant"—Plaintiff—to show that the decision of the fiduciary—Unum—"was arbitrary and capricious." *See Lloyd v. Procter & Gamble Disability Benefit Plan, Plan #501*, No. 20-4329, 2021 WL 4026683, at *5 (6th Cir. Sept. 3, 2021) (citing *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011)).

Under the arbitrary-and-capricious standard, the Court upholds a plan administrator's decision "as long as it [wa]s the result of a deliberate, principled reasoning process." *Sandeen v. Unum Grp. Corp.*, No. 22-5374, 2023 WL 2379012, at *2 (6th Cir. Mar. 7, 2023) (quoting *Autran*,

8

27 F.4th at 411); *see Holden v. Unum Life Ins. Co. of Am.*, No. 20-6318, 2021 WL 2836624, at *11 (6th Cir. July 8, 2021) ("[U]nder the arbitrary and capricious standard—the 'least demanding form of judicial review'—we ask only whether it is possible to offer an explanation for the outcome." (citation omitted)). "Substantively, plan administrators may reach only those conclusions that are supported by substantial evidence in the administrative record." *Autran*, 27 F.4th at 412. The Court considers "only the evidence available to the administrator at the time the final decision was made." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). And "[p]rocedurally, plan administrators must engage in reasoned decision making." *Autran*, 27 F.4th at 412.

A number of factors bear on the Court's evaluation of the plan administrator's decision, including (1) the "quality and quantity of the medical evidence and the opinions on both sides of the issues;" *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003); (2) "whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant;" *Fura v. Fed. Exp. Corp. Long Term Disability Plan*, 534 F. App'x 340, 342 (6th Cir. 2013); and (3) whether the plan administrator operated "under a conflict of interest;" *Firestone Tire & Rubber*, 489 U.S. at 115. But "[n]one of the potentially relevant factors is dispositive in its own right; [the Court] must weigh them all when deciding whether the administrator's ultimate conclusion resulted from a rational process." *Autran*, 27 F.4th at 412. "[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *McClain*, 740 F.3d at 1066 (quoting *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002)).

With this in mind, the Court agrees with the Report's conclusion that it would be inappropriate to consider Plaintiff's "Motion to Determine Extent of Deference" [Doc. 122] "separately from the underlying merits of the suit" [*See* Doc. 152 at 12]. *See Metropolitan Life Ins. Co. v. Glenn*, 544 U.S. 118, 116 (2008); *Smith v. Continental Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006); *Sandeen v. Paul Revere Life Ins. Co.*, No. 1:18-cv-248, 2022 WL 966848, at *14-15 (E.D. Tenn. March 3, 2022). Therefore, the Court **ADOPTS** this portion of the Report and considers Plaintiff's "Motion to Determine the Extent of Deference" [Doc. 122] a supplement to her "Motion for Judgment on the ERISA Record" [Doc. 126].

**III. Analysis**

**A. Unum Was Entitled To Consider The Entire Record.**

Plaintiff asserts that the Report erred by considering evidence of her medical improvement occurring before April 20, 2018, when Defendant initially approved Plaintiff's LWOP benefits. Plaintiff relies on *Kramer v. Paul Revere Life Ins. Co.*, 571 F.3d 499, 507 (6th Cir. 2009) to support her argument. Plaintiff reads *Kramer* to hold that any time an insurance provider approves a new disability benefit, the provider is estopped from considering evidence of medical improvement prior to that date. This reading is too broad.

In *Kramer*, the claimant was disabled for five (5) years, and significant medical evidence indicated that claimant's condition worsened over that period. *Id.* at 505. Earlier file reviewers noted that the "claimant's abilities have steadily gone downhill rendering her totally incapable of performing any" qualifying work. *Id.* at 502. The claimant in *Kramer* developed a bone spur, increased her daily dosage of valium, and began using fentanyl patches to cope with her disability. *Id.* Becasue later opinions of file reviewers "fl[ew] in the face of all the other evidence in the

10

record." *Id.* at 507. Accordingly, the Court concluded that termination of benefits based on those later file reviewer opinions—absent some improvement—was arbitrary and capricious. *Id.*

Plaintiff's case is distinguishable. The record shows that Plaintiff's medical condition improved over time. Dr. Curlee increased his assessment of her lower body motor strength to "5/5" in all areas by March 22, 2018 [Doc. 31-1 at 33, *sealed]. Her straight leg raise test improved from positive to negative [*Id.* at 33]. Her ability to walk increased from half a mile to 1.5 miles in an hour [*Id.* at 33, 67]. The amount of narcotics Plaintiff received decreased to ten milligrams of Percocet per day [Docs. 31 at 67, *sealed; 31-1 at 33, *sealed]. Plaintiff's imaging showed a successful fusion of the vertebrae with no nerve root impingement [Doc. 31-1 at 124, *sealed]. Dr. Smith had already issued an opinion stating that Plaintiff's recovery from surgery no longer supported the restrictions and limitations put in place by Dr. Curlee.

*Kramer* did not conclude that the approval of disability benefits somehow restricted the evidence that a claims administrator could consider during its next review. And such a holding would be contrary to the Sixth Circuit's longstanding position that claims administrators and reviewing courts must examine "the administrative record as a whole." *See, e.g.*, *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005).

Reviewing the administrative record as a whole Plaintiff showed improvement over the twelve (12) months following her surgery. By May 2018, Drs. Smith and Kanovsky both concluded that Plaintiff could perform work at the sedentary level—meaning that she no longer met the qualifications to receive benefits. They based their conclusions on the new records from Plaintiff's treating physician and in consideration of his contrary opinion. The decision to rely on

11

the opinions of two doctors who reviewed and analyzed Plaintiff's entire medical file was not arbitrary and capricious.

### B. Unum's Decision To Rely On Its Own Experts Without Additional Physical Examination Was Not Arbitrary And Capricious.

Next, Plaintiff asserts that the Report erred by concluding Unum was not required to order a physical examination of Plaintiff. The Sixth Circuit has not adopted a bright line rule requiring a claims administrator to exercise its right to order a physical examination, as opposed to relying on a review of a claimant's medical file. Generally, a review of the medical records alone is arbitrary and capricious only "where there was significant objective medical data in the record to support disability or where the reviewer did not adequately consider the record." *Gilrane v. Unum Life Ins. Co. of Am.*, No. 1:16-cv-403, 2017 WL 4018853, at *8 (E.D. Tenn. Sept. 12, 2017) (citing *Shaw v. AT&T Unmbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015)). The Parties do not dispute that Unum had the right to order a physical exam under both policies [*See* Docs. 31 at 128, *sealed; 31-3 at 441, *sealed].

Plaintiff's main argument is that Unum's file reviewers ignored "significant objective medical evidence—including the consistent physical exam" results noted by Dr. Curlee, "in favor of their own mischaracterizations of Ms. Olah's abilities to perform non-work-related activities" [Doc. 152 at 9]. But as the Report noted, Drs. Smith and Kanovsky "cited far more than just Plaintiff's daily activities to support the opinion that Plaintiff's levels of pain and restriction were not as serious as she reported" [Doc. 152 at 18]. Indeed, Unum's file reviewers relied heavily on Dr. Curlee's physical examinations. Those examinations included a compression test, femoral nerve traction test, Patrick-Fabere test, supine straight leg raise test, seated straight leg raise test, and a hip internal and external rotation test [*See* Doc. 31-1 at 91, 117, 124, *sealed]. By the time

12

Unum denied Plaintiff benefits, these tests were negative, indicating the tests failed to reproduce Plaintiff's reported pain [*See id.* at 117].

Drs. Smith and Kanovsky also relied on Dr. Curlee's examination of Plaintiff's spine, where Dr. Curlee noted that Plaintiff reported pain upon flexion [*Id.*]. Dr. Kanovsky explained that Plaintiff's reported pain should decrease on flexion and increase on extension [*Id.* at 124]. Dr. Smith stated in his opinion that "[t]he most recent exams document no strength deficits, minimal sensorineural deficits, normal gait with can assist, and some L-spine and greater trochanter tender points" [*Id.* at 92]. Dr. Kanovsky also referred directly to the spinal range of motion test conducted by Plaintiff's physical therapist in his final opinion [*Id.* at 108, 124]. Dr. Kanovsky interpreted the test to show Plaintiff had a functional range [*Id.* at 124]. On appeal, Dr. Penny's opinion likewise relied on Dr. Curlee's test results to determine when certain symptoms abated like "lower extremity weakness," "S1 distribution numbness," "range of motion" limitations for Plaintiff's left shoulder and lumbar, to name only a few [Doc. 31-2 at 468, *sealed]. Far from ignoring or failing to credit Dr. Curlee's physical exam results, Unum's file reviewers specifically relied on Dr. Curlee's physical exam results.

Plaintiff also presents a series of other objections related to physical exams. The Court addresses each in turn. **First**, Plaintiff objects that the Report overlooks a section of Dr. Smith's opinion where he acknowledges evidence of continuing medical symptoms. Specifically, Dr. Smith acknowledged that Plaintiff had midline lumbar spine tenderness and decreased sensation in the right leg and foot [Doc. 31-1 at 91, *sealed]. Ultimately, Dr. Smith concluded that these symptoms did not support "an inability of Mrs. Olah to work full time within the Sedentary range of functional demands" [*Id.*]. Plaintiff's objection to this part of Dr. Smith's opinion is misplaced. Dr. Smith was required to "adequately review the entire record," which includes properly

13

considering any evidence in the record that might appear to conflict with his ultimate opinion. *See Gilrane*, 2017 WL 4018853, at *8 (citing *Shaw*, 795 F.3d at 550). Nothing about this portion of Dr. Smith's opinion would require Unum to order a physical examination. Instead, it tends to show reasoned deliberation.

***Second***, Plaintiff argues that Unum failed to adequately explain why Dr. Kanovsky changed his opinion, therefore Unum was arbitrary and capricious to rely on Dr. Kanovsky's changed opinion without ordering a physical examination. This argument falls flat because Dr. Kanovsky's himself explained why he changed his position. Dr. Kanovsky's initial opinion was that "the available information reviewed does not allow . . . [him] to determine functional capacity" [Doc. 31-1 at 398, *sealed]. Dr. Kanovsky then recommended based on the specific surgery performed that Unum's file reviewers review the file again once Plaintiff was twelve (12) months into her recovery [*Id.* at 99]. When Dr. Kanovsky reviewed Plaintiff's case again, twelve (12) months after her operation, the available information was sufficient to determine functional capacity. Dr. Curlee noted every dimension of Plaintiff's motor strength was again "5/5" [*Id.*]. Plaintiff's physical therapist sent notes addressing Plaintiff's range of motion, which Dr. Kanovsky relied on in his final opinion [*Id.*]. None of these facts persuade the Court that Dr. Kanovsky ignored "significant objective medical evidence" or failed to "adequately review the entire record." *See Gilrane*, 2017 WL 4018853, at *8 (citing *Shaw*, 795 F.3d at 550).

***Third***, Plaintiff argues that Unum's file reviewers' opinions were "cherry-picked" and misrepresent the record of her ability to perform activities of daily living. In particular, Plaintiff points to statements in the opinions of Drs. Smith and Kanovsky that she can do light housework and drive [Doc. 31-1 at 92, *sealed]. Plaintiff specifically reported to her claims administrator that she "sometimes can manage home tasks with breaks in between;" she "can drive depending on

14

day;" her mother will assist with trips to the grocery store; and "[s]ometimes she can go by herself on short trips" [Doc. 31 at 176, 286, *sealed]. The opinions of Drs. Smith and Kanovsky do not quote Plaintiff's precise language, but they captured her general abilities. And as discussed above, their opinions were also based on substantial objective medical evidence.

*Finally*, Plaintiff argues that the Report failed to adequately distinguish the instant case from *Platt v. Walgreen Income Protection Plan for Store Managers*, 455 F. Supp. 2d 734 (M.D. Tenn. 2006). *Platt* revolved around a diagnostic dispute. The claimant reported pain and fatigue, which were diagnosed by different doctors as "chronic fatigue syndrome secondary to Parvovirus Infection" and fibromyalgia. *Id.* at 740. However, the claimant also reported that she was capable of handling the activities of daily life. *Id.* Based on those factors, a file reviewer concluded that the claimant's medical records "failed to reveal any significant physical pathology" and had nothing "to document a deterioration in her functional capacity." *Id.* at 740, 745. Dissatisfied with the available medical evidence underlying the diagnosis, the file reviewer turned to Plaintiff's reports of how the condition affected her life. Specifically, the file reviewer stated "[i]t appears [the claimant] does what [she] 'needs or wants to do' when she needs to or wants to do activities. This is in distinction to a true ongoing impairment." *Id.* at 745-46. Perhaps most importantly, one of the reviewers recommended that the insurer request additional medical examination. *Id.* at 746. On those facts, the district court held that the plan administrator's reliance on the file reviewer without ordering additional physical examination was arbitrary and capricious. *Id.* at 747.

The present case is readily distinguishable. Plaintiff's "significant physical pathology" is that her spinal column severely impinged a nerve root, and her body suffered the expected trauma from Dr. Curlee inserting hardware into her spine to relieve the impingement. Unlike *Platt*, no

15

medical professional expressed any skepticism about Plaintiff's medical pathologies, and the record amply reflects that Plaintiff was not capable of performing work at a sedentary level immediately following surgery. Thus, the instant case does not hinge on a credibility determination by Drs. Smith and Kanovsky. Instead, the doctors relied on substantiated medical evidence that twelve (12) moths after her surgery, Plaintiff no longer met the requirements to be categorized as disabled. As Plaintiff's strength, range of movement, and walking endurance all improved following her surgery, Unum's file reviewers found that she had a capacity to return to a sedentary work level. And, of course, no Unum file reviewer recommended additional examination at that time.

Plaintiff has failed to demonstrate that the opinions of Drs. Smith, Kanovsky, or Penny were unsupported by substantial objective medical evidence or that they failed to adequately consider the record. *See Gilrane*, 2017 WL 4018853, at *8 (citing *Shaw*, 795 F.3d at 550). Therefore, it was not arbitrary and capricious for the plan administrator to rely, in part, on the opinions of Unum's file reviewers without ordering an additional physical examination.

### C. Plaintiff Failed To Connect Her Claim To Reported Conflicts Of Interest At Unum.

Finally, Plaintiff objects that the Report gave inadequate "weight" to her conflict-of-interest arguments. Specifically, Plaintiff argued two conflicts of interest at Unum inappropriately affected her benefits determination. ***First***, Plaintiff argued that the Unum director who oversaw her claim pressured subordinates to wrongfully deny claims. ***Second***, she argued that Unum's bonuses to physicians employed as file reviewers encourages them to issue unreliable opinions. Both arguments fail for the same reason—Plaintiff failed to produce any evidence that either alleged conflict of interest affected the plan administrator's decision to deny her specific claims.

16

If a plan administrator operates "under a conflict of interest, th[e] conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber*, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). "[T]he fact that a plan administrator both evaluates claims for benefits and pays benefits claims" creates a conflict of interest. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *see also Rothe v. Duke Energy Long Term Disability Plan*, 688 F. App'x 316, 319 (6th Cir. 2017). The use of "in-house consultants" who could "have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements" may also create a conflict of interest. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003).

But conflicts of interest "prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. at 117. Ultimately, the Court gives "more weight to the conflict in circumstances that suggest a higher likelihood that [the conflict] affected the benefits decision." *Rothe*, 688 F. App'x at 319. But "[m]ere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Jackson v. Metro. Life*, 24 F. App'x 290, 292 (6th Cir. 2001). Plaintiff must "provide 'significant evidence' that the conflict actually affected or motivated the decision at issue." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (quoting *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998)). Conjecture is not enough. *See id.*

17

***First***, Plaintiff argues that Unum Director Meg Murray-Nutz, exerted pressure on the disability benefits specialist handling Plaintiff's claim to deny the claim. Plaintiff claims that Director Murray-Nutz received weekly tracking reports related to the profitability of ongoing claims and setting goals to stop paying claims, and that Director Murray-Nutz consistently met her claim closure quotas laid out in the weekly tracking report.

To be sure, Defendants' role as plan administrator and payor of any benefits creates a structural conflict of interest. *See Metro. Life Ins.*, 554 U.S. at 112. However, Plaintiff's argument regarding Director Murray-Nutz fails to connect that structural conflict to the decision to terminate Plaintiff's claims. *See Cooper*, 486 F.3d at 165. Even if the Court accepted Plaintiff's argument regarding Director Murray-Nutz as conclusively established, the fact remains the Director Murray-Nutz did not decide to terminate Plaintiff's claims [*See* Doc. 31-1 at 132, *sealed]. A disability benefits specialist reviewed the record and determined that termination of Plaintiff's benefits was warranted [*Id.*]. He then drafted a letter with a statement of reasons for the termination, [*see id.* at 137], which was approved by a quality compliance consultant before it was sent to Plaintiff, [*id.* at 132-33]. Plaintiff identified no evidence placing Director Murray-Nutz in the decision chain with respect to the claims at issue, and Plaintiff presented no evidence—as opposed to conjecture—that Director Murray-Nutz otherwise pressured the decision makers to deny Plaintiff's claims. *See Cooper*, 486 F.3d at 165. This is not enough to move the needle.

***Second***, Plaintiff argues that Unum's physicians are "eligible for bonuses that hinge on Unum's profitability," therefore Drs. Smith, Kanovsky, and Penny were incentivized to write inaccurate opinions that supported the termination of benefits. In support, Plaintiff again asserts that all three opinions relied on "cherry-picked" evidence, and that Dr. Kanovsky's initial and final opinions indicate that his opinion is unreliable. The Court fully addressed both assertions

18

previously. Suffice it to say here, neither is an accurate description of the record nor more than a conclusory allegation of bias. *See Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 507 (6th Cir. 2008) (refusing to discount in-house reviewer's medical opinion where plaintiff "offered only conclusory allegations of bias"). Without evidence tied to Plaintiff's claims, Plaintiff cannot show that this general bonus structure affected Defendants' decision here. *See Cooper*, 486 F.3d at 165; *Cook v. Prudential Ins. Co. of Am.*, 494 F. App'x 599, at *5 (6th Cir. Aug. 16, 2012) (rejecting contention of bias supported by "no more than cursory statements"). Upon review of the entire record in this case, the Court cannot conclude that conflicts of interest impacted Plaintiff's claims or that Unum's denial of her claims was anything other than "a deliberate, principled reasoning process and supported by substantial evidence." *See Sandeen*, 2023 WL 2379012, at *2.

## IV. Conclusion

For the reasons stated above, Defendants' decision to terminate Plaintiff's disability claims was not arbitrary and capricious. The– Court **OVERRULES** Plaintiff's objections to the Report and Recommendation [Doc. 152] and **ADOPTS** the recommendations of the Report as set forth above. Accordingly, the Court **GRANTS** Defendants' "Motion for Judgment on the Administrative Record" [Doc. 119] and **DENIES** Plaintiff's "Motion for Judgment on the ERISA Record" [Doc. 126]. This case is dismissed. An appropriate judgment shall enter.

IT IS SO ORDERED.

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge